**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NICOLE MCAULEY and JESSICA WRIGHT, individually and all others similarly situated,<br><br>                                    Plaintiffs,<br><br>        v.<br><br>THE HONEY POT COMPANY, LLC,<br><br>                                    Defendant. | Case No. 1:23-cv-01986-AT<br><br>Hon. Analisa Torres<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Nicole McAuley and Jessica Wright ("Plaintiffs"), by and through their attorneys, make the following allegations pursuant to the investigation of their counsel and based upon information and belief—except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge—against Defendant The Honey Pot Company, LLC ("Honey Pot" or "Defendant").

## NATURE OF THE ACTION

1.     This is a class action lawsuit on behalf of purchasers of Defendant's "feminine care foaming washes" (the "Products") in the United States.

2.     Defendant manufactures and sells a variety of products for the vulva and vagina. Products include vulvar washes, wipes, sprays, and deodorant powders; tampons, underwear liners, and menstrual cups; and, "vaginal health supplement" pills.  Defendant sells these Products throughout the United States, including New York.

3.     Defendant holds itself out as an advocate for women's health:

> Our mission is to educate, support, and provide women around the world with the tools and resources that promote feminine health and wellness.  We do this by engaging and empowering the women we serve one healthy honey pot at a time.  …  [O]ur goal is to provide women with a healthy

1

alternative to feminine care that is free of chemicals, parabens, carcinogens, and sulfates.[1]

4.      One of Defendant's product lines is "feminine care foaming washes," which are meant to "boost moisture and soothe while gently cleansing [a woman's] most delicate parts."[2] The Products are foam soaps that are intended for use on the vulva, and the Products come in a variety of scents and/or special properties.  The Products at issue include: Normal Wash, Sensitive Wash, Cucumber Aloe Wash, and Bergamot Rose Foaming Wash.

5.      On the Products' label, Defendant represents that the Products are suitable for vulvar use: the label describes the Products as "plant-derived feminine care … foaming wash" and direct women to "use daily to refresh" their "intimate parts."  Thus, reasonable consumers reviewing the Products' label would believe the Products are suitable for vulvar cleansing.

6.      However, Defendant's representation that women should use these Products on their vulva is false: the medical community is adamant that women should only use water to clean their vulvas and that feminine care washes are harmful to women's health.  Accordingly, the claim that these Products are suitable for vulvar use is false and misleading because the Products are not safe for vulvar use, let alone on a daily basis, and consumers would not have purchased the Products, or paid substantially less for them, had they known the claim was not true.

7.      Plaintiffs are purchasers of the Product who assert claims on behalf of themselves and similarly situated purchasers of the Product for (i) violation of New York General Business

---

[1] *The Honey Pot Company*, LINKEDIN, https://www.linkedin.com/company/thehoneypotco (last visited Dec. 23, 2022).

[2] *Normal Wash*, THE HONEY POT COMPANY, https://thehoneypot.co/products/normal-washfreshness (last visited Dec. 23, 2022).

Law ("GBL") § 349, (ii) violation of GBL § 350, (iii) breach of express warranty, (iv) unjust enrichment, and (v) fraud.

## PARTIES

8.      Plaintiff Nicole McAuley is a resident of New York City who has an intent to remain there and is therefore a citizen of New York.  On November 7, 2021, Plaintiff McAuley purchased The Honey Pot Sensitive Foaming Wash from Target.  Prior to her purchase of the Product, Plaintiff McAuley reviewed the Products' labeling and packaging and saw that the Product was labeled and marketed as a "feminine care … foaming wash" suitable for her vulva. In purchasing the Product, Plaintiff McAuley relied on Defendant's representations—as described in detail below—that the Product was suitable as a feminine care wash on her vulva. Plaintiff McAuley saw these representations prior to and at the time of purchase, and understood them as representations and warranties that the Product was suitable as a feminine care wash for her vulva.  Plaintiff McAuley understood these representations to mean Product was suitable for use as a feminine care wash on the vulva and that the Product was not harmful to her sexual anatomy.  Plaintiff McAuley relied on these representations and warranties in deciding to purchase the Product.  Accordingly, those representations and warranties were part of the basis of the bargain, in that she would not have purchased the Product on the same terms had she known those representations were not true.  In making her purchase, Plaintiff McAuley paid a substantial price premium due to the false and misleading claim that the product is suitable as a feminine care wash for the vulva.  Had Plaintiff McAuley known that the claim that the Product is suitable as a feminine care wash for the vulva was false and misleading, Plaintiff McAuley would not have purchased the Product.  Plaintiff McAuley did not receive the benefit of her bargain because the Product was not, in fact, suitable for use as a feminine care wash for the vulva.

9.      Likewise, when Plaintiff McAuley reviewed the Product's packaging, there were no representations or warranties that the Product was unsafe for use on her vulva or unsuitable as a feminine care wash.  Yet, as alleged throughout this Complaint, feminine care washes such as the Product are unsafe and unsuitable for use on the vulva.  Accordingly, Defendant's omissions were part of the basis of the bargain in that Plaintiff McAuley would not have purchased the Product or would have paid substantially less for it had she known that the Product was unsafe for use on her vulva.  Plaintiff McAuley did not receive the benefit of her bargain because the Product was not, in fact, safe or suitable for the vulva and therefore unsuitable as a feminine care wash.  Further, Defendant's omission would have been material to Plaintiff McAuley because it concerns the Product's safety.

10.      Plaintiff Jessica Wright is a resident of New York City who has an intent to remain there and is therefore a citizen of New York.  In September 2022, Plaintiff Wright purchased The Honey Pot Sensitive Foaming Wash from Target.  Prior to her purchase of the Product, Plaintiff Wright reviewed the Product's labeling and packaging and saw that the Product was labeled and marketed as a "feminine care … foaming wash" suitable for her vulva. In purchasing the Product, Plaintiff Wright relied on Defendant's representations—as described in detail below—that the Product was suitable as a feminine care wash on her vulva.  Plaintiff Wright saw these representations prior to and at the time of purchase, and understood them as representations and warranties that the Product was suitable as a feminine care wash for her vulva.  Plaintiff Wright understood these representations to mean Product was suitable for use as a feminine care wash on the vulva and that the Product was not harmful to her sexual anatomy. Plaintiff Wright relied on these representations and warranties in deciding to purchase the Product.  Accordingly, those representations and warranties were part of the basis of the bargain, in that she would not have purchased the Product on the same terms had she known those

representations were not true.  In making her purchase, Plaintiff Wright paid a substantial price premium due to the false and misleading claim that the product is suitable as a feminine care wash for the vulva.  Had Plaintiff Wright known that the claim that the Product is suitable as a feminine care wash for the vulva was false and misleading, Plaintiff Wright would not have purchased the Product.  Plaintiff Wright did not receive the benefit of her bargain because the Product was not, in fact, suitable for use as a feminine care wash for the vulva.

11.    Likewise, when Plaintiff Wright reviewed the Product's packaging, there were no representations or warranties that the Product was unsafe for use on her vulva or unsuitable as a feminine care wash.  Yet, as alleged throughout this Complaint, feminine care washes such as the Product are unsafe and unsuitable for use on the vulva.  Accordingly, Defendant's omissions were part of the basis of the bargain in that Plaintiff Wright would not have purchased the Product or would have paid substantially less for it had she known that the Product was unsafe for use on her vulva.  Plaintiff Wright did not receive the benefit of her bargain because the Product was not, in fact, safe or suitable for the vulva and therefore unsuitable as a feminine care wash.  Further, Defendant's omission would have been material to Plaintiff Wright because it concerns the Product's safety.

12.    Defendant The Honey Pot Company, LLC is a limited liability company incorporated under the laws of the state of Georgia, with its principal place of business in Atlanta, Georgia.  Defendant markets, sells, and distributes the Products throughout the United States, including in the States of New York.  Defendant manufactured, marketed, and sold the Products during the class period.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of

the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

14.     Defendant is an "unincorporated association" under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), and Defendant is therefore "a citizen of the State where it has its principal place of business [Georgia] and the State under whose laws it is organized [Georgia]." *See* 28 U.S.C. § 1332(d)(10).

15.     This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within New York, such that Defendant has significant, continuous, and pervasive contracts with the State of New York.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant transacts significant business within this District and because Plaintiffs McAuley and Wright purchased and used the Product in this District.

## FACTUAL ALLEGATIONS

### A.     The Female Anatomy

17.     A woman's sexual anatomy is a delicate and complex system in the body.  It produces important hormones, regulates the menstrual cycle, brings life into the world, and makes sexual pleasure possible.  Health organizations and professionals agree that it is important for women to take steps to protect the reproductive system from infections, diseases, and injuries in order to prevent long-term health problems.  Many conditions and disorders affect women's reproductive systems: issues range from having a slight impact—such as inflammation—to causing life-altering circumstances—such as severe pain, infertility, kidney failure, or even death.

18.     The female anatomy is composed of external and internal structures.  The entire external structure is called the vulva, and it includes the labia, clitoris, and vaginal opening.  The outer and inner labia, which translate to "lips," are folds of skin around the vaginal opening, and the labia serves to protect the rest of the sexual anatomy.  The vaginal opening, as the name suggests, leads to the vagina.  The vagina is the beginning of the internal sex organs, and the vagina leads to the rest of the reproductive organs—the cervix, uterus, fallopian tubes, and ovaries.  These internal organs control the release of hormones, the menstrual cycle, and a woman's ability to have a baby.

19.     A representation of the external structure:[3]



---

[3] *What are the parts of the female sexual anatomy?*, PLANNED PARENTHOOD (last visited Nov. 4, 2022), https://www.plannedparenthood.org/learn/health-and-wellness/sexual-and-reproductive-anatomy/what-are-parts-female-sexual-anatomy.

20.     A representation of the internal structure:[4]



21.     Female anatomy has evolved to be self-cleaning.[5]  As a delicate environment, the vagina is constantly working to stay lubricated, maintain its pH balance, and keep good versus bad bacteria in check.[6]  The organs self-clean through discharge, a natural shedding of fluid from the uterus, cervix, and vagina, which changes in consistency and color throughout the menstrual cycle.[7]  The vagina also has a natural microbiome (*i.e.*, a community of healthy bacteria) that helps regulate the vaginal pH and wards off health problems, such as human papillomavirus infections, bacterial vaginosis, or HIV.[8]

---

[4] *Id.*

[5] Wendee Nicole, *A Question for Women's Health: Chemicals in Feminine Hygiene Products and Personal Lubricants*, 122(3) ENVIRONMENTAL HEALTH PERSPECTIVES A71, A72 (2014).

[6] Korin Miller, *Ob/Gyns Explain That Stuff in Your Underwear at the End of the Day*, SELF (Jan. 28, 2018), https://www.self.com/story/ob-gyns-decode-discharge.

[7] *Id.*

[8] *Bad Bugs: The Vaginal Microbiome and Cancer*, THE UNIVERSITY OF ARIZONA HEALTH SCIENCES (Oct. 25, 2019), https://healthsciences.arizona.edu/tomorrow/bad-bugs-vaginal-microbiome-and-cancer; Stephanie Watson, *Everything You Need to Know About Maintaining*

22.     Because the female sex organs self-clean, gynecologists, health agencies, medical schools, and medical associations all advise women to only use plain warm water to clean the vagina and vulva.[9]  For example, the University of Michigan's Center for Vulvar Diseases – one of only a handful of clinics that specialize in vulvar care – instructs all women to "[c]lean the vulva with water only" as a way to "relieve or prevent vulvar irritation, pain and itching."[10]  The U.S. Department of Health & Human Services' Office on Women's Health advises women to "[u]se warm water only to clean the outside of [the] vagina.  [Women] do not need to use soap."[11]  The American College of Obstetricians and Gynecologists recommends that women "[u]se plain warm water to clean the vulva."[12]  The Mayo Clinic explains that "[a] woman only needs to clean her vagina with warm water.  Yes, warm water.  Many women may not realize that the vagina has a very acidic environment, which naturally protects against bacteria."[13]  The

---

*Your Vaginal pH Balance*, HEALTHLINE (July 11, 2019), https://www.healthline.com/health/womens-health/vaginal-ph-balance#normal-ph.

[9] *See* Office on Women's Health, *Bacterial Vaginosis: how can I lower my risk of BV?*, U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES, https://www.womenshealth.gov/a-z-topics/bacterial-vaginosis (last visited Nov. 17, 2022); *Vaginitis: Frequently Asked Questions*, THE AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS, https://www.acog.org/womens-health/faqs/vaginitis (Dec. 2021); Mayo Clinic Staff, *You Don't Need Fancy Products For Good Feminine Hygiene*, MAYO CLINIC HEALTH SYSTEM (Nov. 2, 2016), https://www.mayoclinichealthsystem.org/hometown-health/speaking-of-health/you-dont-need-fancy-products-for-good-feminine-hygiene; *Vulvar Skin Care Guidelines*, UNIVERSITY OF IOWA HOSPITALS & CLINICS (Dec. 2021), https://uihc.org/educational-resources/vulvar-skin-care-guidelines.

[10] *Vulvar Diseases: An Introduction to Caring For Yourself*, THE UNIVERSITY OF MICHIGAN CENTER FOR VULVAR DISEASE, 23-24 (Aug. 2021), https://www.med.umich.edu/1libr/Gyn/VulvarDiseasesBooklet.pdf.

[11] Office on Women's Health, *Bacterial Vaginosis: how can I lower my risk of BV?*, U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES, https://www.womenshealth.gov/a-z-topics/bacterial-vaginosis (last visited Nov. 17, 2022).

[12] *Vaginitis: Frequently Asked Questions*, THE AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS, https://www.acog.org/womens-health/faqs/vaginitis (Dec. 2021).

[13] Mayo Clinic Staff, *You Don't Need Fancy Products For Good Feminine Hygiene*, MAYO CLINIC HEALTH SYSTEM (Nov. 2, 2016), https://www.mayoclinichealthsystem.org/hometown-health/speaking-of-health/you-dont-need-fancy-products-for-good-feminine-hygiene.

University of Iowa Hospitals and Clinics specifically states: "***Do not*** use soap directly on the vulvar skin. Use warm water."[14]

23.    Not only is soap unnecessary to maintain a clean vulva and vagina, but introducing chemicals (*e.g.*, through soap) to such a delicate system is hazardous. The vagina and portions of the vulva are mucous membranes and thus are capable of secreting and absorbing fluids at a higher rate than regular skin.[15] Researchers have even explored the possibility of delivering drugs vaginally because of the organ's ability to rapidly absorb chemicals without metabolizing them.[16] However, although rapid absorption may be helpful when administering medication, it poses serious issues when a woman's vagina and vulva are exposed to harmful chemicals.

24.    The American College of Obstetricians and Gynecologists explains that "[s]oaps and detergents can change the normal balance of organisms inside the vagina."[17] The Mayo Clinic echoes this warning: "[a]dding chemicals, including anti-bacterial soaps, alters the normal eco-system and can allow growth of [bad] bacteria and yeast."[18] One study even found that women who use feminine hygiene products are approximately three times more likely to

---

[14] *Vulvar Skin Care Guidelines*, UNIVERSITY OF IOWA HOSPITALS & CLINICS (Dec. 2021), https://uihc.org/educational-resources/vulvar-skin-care-guidelines (emphasis added).

[15] Wendee Nicole, *A Question for Women's Health: Chemicals in Feminine Hygiene Products and Personal Lubricants*, 122(3) ENVIRONMENTAL HEALTH PERSPECTIVES A71, A72 (2014).

[16] *Id.*

[17] *Vaginitis: Frequently Asked Questions*, THE AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS, https://www.acog.org/womens-health/faqs/vaginitis (Dec. 2021).

[18] Mayo Clinic Staff, *You Don't Need Fancy Products For Good Feminine Hygiene*, MAYO CLINIC HEALTH SYSTEM (Nov. 2, 2016), https://www.mayoclinichealthsystem.org/hometown-health/speaking-of-health/you-dont-need-fancy-products-for-good-feminine-hygiene.

experience an adverse health condition (*e.g.*, bacterial vaginosis, yeast infection, urinary tract infection, or sexually transmitted infection).[19]

25.     Simply put, the medical community warns that using soap can cause irritation or alter sex organs' self-regulating eco-system, leading to vaginitis, bacterial infections, yeast infections, or other forms of diseases.[20]

26.     Even more concerning, soaps created to specifically clean the vulva and/or vagina contain chemicals that are known to be harmful or even toxic.  In 2013, Women's Voices for the Earth ("WVE"), released a report detailing how feminine hygiene products use certain ingredients that are known or suspected to be harmful to the human body.[21]  The report discussed how the female anatomy rapidly absorbs chemicals, which is all the more reason to be concerned by the ingredients companies put into the feminine hygiene products.[22]

27.     The report, aptly titled "Chem Fatale," listed the following ingredients as causes for potential health effects: Benzethonium Chloride, D&C Red 33, Ext. D&C Violet #2, FD&C Yellow #5, Diazolidinyl Urea, DMDM Hydantoin, Fragrance, Methylchloroisothiazolinone, Methylisothiazolinone, and Quaternium-15.[23]  These ingredients can cause allergic rashes,

---

[19] Sara E. Crann et al., *Vaginal Health and Hygiene Practices and Product Use in Canada: a National Cross-sectional Survey*, 18 BMC WOMEN'S HEALTH 52 (2018), https://bmcwomenshealth.biomedcentral.com/articles/10.1186/s12905-018-0543-y.

[20] *See Vaginitis: Frequently Asked Questions*, THE AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS, https://www.acog.org/womens-health/faqs/vaginitis (Dec. 2021); Mayo Clinic Staff, *You Don't Need Fancy Products For Good Feminine Hygiene*, MAYO CLINIC HEALTH SYSTEM (Nov. 2, 2016), https://www.mayoclinichealthsystem.org/hometown-health/speaking-of-health/you-dont-need-fancy-products-for-good-feminine-hygiene.

[21] Wendee Nicole, *A Question for Women's Health: Chemicals in Feminine Hygiene Products and Personal Lubricants*, 122(3) ENVIRONMENTAL HEALTH PERSPECTIVES A71, A72 (2014).

[22] *Id.*

[23] *Chem Fatale*, WOMEN'S VOICES FOR THE EARTH (Nov. 2013), https://womensvoices.org/wp-content/uploads/2013/11/Chem-Fatale-Report.pdf.

release formaldehyde (which can cause cancer), inhibit the growth of healthy vaginal bacteria, and act as endocrine disruptors.[24]

28.    Although some rashes caused by harmful chemicals may clear without treatment from a healthcare professional, infections typically do not improve on their own.  Infections often require antibiotics or prescription antifungal medications.  However, endocrine disruptors ("endocrine-disrupting chemicals" or "EDCs") give much of the medical community pause. EDCs can cause developmental malformations, interfere with reproduction, increase risk of cancer, and disturb the immune and nervous system functions.[25]

### B.    The Feminine Hygiene Product Market

29.    Despite experts' advice to only use water to clean the vulva because scientific evidence demonstrates chemicals can lead to serious problems, companies such as Defendant have developed and heavily marketed "feminine care washes" for the vulva and vagina.  In the United States alone, women spend over $2 billion a year on feminine hygiene products, which include tampons, washes, sprays, powders, and wipes.[26]  Globally, the feminine hygiene products market is expected to grow from $38.18 billion in 2021 to $54.52 billion in 2028.[27]

30.    Medical professionals and researchers note that women feel a social pressure to obtain an "unrealistic standard of what a vulva and vagina should smell like, look like, [and] feel

---

[24] *Id.*; *Intimate Care Product Testing: Impacts on Healthy Lactobacilli*, WOMEN'S VOICES FOR THE EARTH, https://womensvoices.org/product-testing-impacts-lactobacilli/ (last visited Nov. 17, 2022).

[25] *What Is Endocrine Disruption?*, U.S. ENVIRONMENTAL PROTECTION AGENCY (March 7, 2022), https://www.epa.gov/endocrine-disruption/what-endocrine-disruption.

[26] Wendee Nicole, *A Question for Women's Health: Chemicals in Feminine Hygiene Products and Personal Lubricants*, 122(3) ENVIRONMENTAL HEALTH PERSPECTIVES A71, A71 (2014).

[27] *Feminine Hygiene Products Market Size, Share & COVID-19 Impact Analysis, By Product Type, Distribution Channel, and Regional Forecast, 2021-2028*, FORTUNE BUSINESS INSIGHTS (Sept. 2021), https://www.fortunebusinessinsights.com/feminine-hygiene-products-market-103530.

like," which fuels this feminine hygiene product market.[28] "People with vulvas and vaginas are spending their money chasing after an ideal that's not rooted in reality or being made to think that their normal, healthy bodily functions are somehow pathologic and need to be addressed."[29]

31.    These modern-day feminine hygiene practices and advertisements are remnants of the historical stigma that women's bodies are unclean.  Some communities around the world still believe that menstruation can spread "impurity," and thus menstruating women are prohibited from attending religious ceremonies, visiting religious spaces, handling food, sleeping in their home, washing their own bodies, and eating certain foods.[30]  Within the United States, experts note that attitudes towards women's bodies and cleanliness have a more complex history tied to racism.[31]  To justify the slave trade, for example, Europeans theorized there is a hierarchy of race based on "phenotypic difference," which included smell.[32]  Historians believe this olfactory discrimination has since shaped ideas of cleanliness in Black communities and sparked hygiene routines in hope of racial assimilation.[33]

32.    Research shows that feminine hygiene products are disproportionately used by Black and Latina women in the United States.[34]  Ami Zota, an associate professor in the

---

[28] Allyson Chiu and Amber Ferguson, *The Troubled Legacy of Feminine Care Products*, THE WASHINGTON POST (May 31, 2022), https://www.washingtonpost.com/wellness/2022/05/31/feminine-wash-honey-pot-history/ (quoting Dr. Fatima Daoud Yilmaz).

[29] *Id.*

[30] *Menstruation and Human Rights – Frequently Asked Questions: Menstruation?  How do they affect the status of women?*, UNITED NATIONS POPULATION FUND (May 2022), https://www.unfpa.org/menstruationfaq.

[31] Allyson Chiu and Amber Ferguson, *The Troubled Legacy of Feminine Care Products*, THE WASHINGTON POST (May 31, 2022), https://www.washingtonpost.com/wellness/2022/05/31/feminine-wash-honey-pot-history/.

[32] *Id.*

[33] *Id.*

[34] *Chem Fatale*, WOMEN'S VOICES FOR THE EARTH (Nov. 2013), https://womensvoices.org/wp-content/uploads/2013/11/Chem-Fatale-Report.pdf.

Department of Environmental and Occupational Health at George Washington University, explains, in particular, many of these products have become "part of the African American beauty culture" over the years.[35]  This means that women in racial minorities are more likely to use feminine hygiene products, so there is a disproportionate exposure to chemicals that the medical community warns against.[36]

33.    To summarize, the feminine hygiene product market preys on the notion that women need a product to make their vaginas and vulvas "clean" or smell a certain way.  But, as medical experts have stated, not only are such products unnecessary due to the vagina and vulva's self-cleaning anatomy, the products release chemicals that are harmful to the vagina and vulva.

### C.    The Honey Pot Company

34.    Defendant manufactures, markets, advertises, labels, and sells The Honey Pot Foaming Wash Products (collectively, the "Products").  The Products include the Normal Wash, Sensitive Wash, Cucumber Aloe Wash, and Bergamot Rose Foaming Wash.

35.    As described herein, Plaintiffs McAuley and Wright each purchased The Honey Pot Sensitive Foaming Wash (the "Purchased Products").  The additional products identified above in paragraph 31 (collective, the "Products") are substantially similar to the Purchased Products:

(a)    **Defendant**.  All Products are manufactured, sold, marketed, advertised, labeled, and packaged by Defendant.

---

[35] *Id.*

[36] *Chem Fatale*, WOMEN'S VOICES FOR THE EARTH (Nov. 2013), https://womensvoices.org/wp-content/uploads/2013/11/Chem-Fatale-Report.pdf.

(b)    **Brand**.  All Products are sold under The Honey Pot Company

trademarked brand name.

(c)    **Marketing Demographics**.  All Products are marketed directly to women

for personal use.

(d)    **Purpose**.  All Products are feminine care washes intended for vulvar use.

(e)    **Application**.  All Products are applied in the same manner: pump the

foam on to clean hands, apply to vulva, and rinse.

(f)    **Misrepresentations**.  All Products contain the same claims that they are

feminine care washes suitable for use on the vulva.

(g)    **Misleading Effect**.  The misleading effect of the Products' labels on

consumers is the same for all Products—consumers pay for feminine care

washes that are not suitable for use on the vulva.

36.    Defendant represents that the Products are feminine care foaming washes that are

suitable for use in "intimate parts."  Defendant includes these representations on the labeling of

the Products:

   











   

37.     Defendant similarly includes these representations on its website:

 

38.     Defendant explains that women need to use a feminine care wash on the vulva "to control the smell and remain comfortable."[37]  Defendant represents the Products as feminine care washes suitable for vulvar use by comparing the vulva to the rest of the skin of a woman's body:

> Just like the rest of your body, your vulva is covered in skin that needs to be cared for with a specific regimen.  Your vulva hygiene routine should include ***cleansing daily with*** … ***cleanser***.  Cleaning the vulva helps reduce a build-up of bacteria which can lead to infection, irritation and inflammation.  Washing the vulva before and after sex can also reduce UTI's and BV.[38]

39.     Defendant continues its representation that the Products are suitable for a vulva: "Daily cleansing with our pH balancing washes … should … be a part of your routine [in order to prevent yeast infections]."[39]  Defendant contends that it has "perfected [its] … feminine wash formula with the addition of lactic acid."[40]  Defendant also represents that women should use the Products "to balance [their] pH, boost moisture and soothe while gently cleansing [their] most delicate parts."[41]

40.     However, the medical community is adamant that a woman's sexual anatomy is a unique and delicate system.  The vulva is ***not*** like the rest of our skin, and women should ***not*** use

---

[37] Dr. Wendy Goodall, *Vulva Wash vs. Water*, THE HONEY POT CO., https://thehoneypot.co/blogs/education/vulva-wash-vs-water (last visited Jan. 4, 2023).

[38] Beatrice Dixon, *Vulva v. Vagina – The Infamous Debate*, THE HONEY POT CO., https://thehoneypot.co/blogs/education/vulva-v-vagina-the-infamous-debate (last visited Jan. 4, 2023) (emphasis added).

[39] *What Is A Yeast Infection, And How Can I prevent It The Natural Way?*, THE HONEY POT CO., https://thehoneypot.co/blogs/science/how-to-prevent-yeast-infection (last visited Jan. 4, 2023).

[40] *Normal Wash*, THE HONEY POT CO., https://thehoneypot.co/products/normal-wash (last visited Jan. 4, 2023); *Sensitive Wash*, THE HONEY POT CO., https://thehoneypot.co/products/normal-wash (last visited Jan. 4, 2023); *Bergamot Wash*, THE HONEY POT CO., https://thehoneypot.co/products/normal-wash (last visited Jan. 4, 2023); *Cucumber Aloe Wash*, THE HONEY POT CO., https://thehoneypot.co/products/normal-wash (last visited Jan. 4, 2023).

[41] *Normal Wash*, THE HONEY POT CO., https://thehoneypot.co/products/normal-wash (last visited Jan. 4, 2023).

feminine care wash products on their vulvas.[42]  On the contrary, gynecologists advise that chemicals in soap (such as those in Defendant's Products) pose serious hazards to women's health.  Thus, gynecologists advise that women should only use plain water to clean the vulva and vagina, and that nothing more than water is necessary because female anatomy is self-cleaning.  Therefore, medical experts advise the Products are not suitable for use on the vulva.

41.    Compounding these issues with the Product are the ingredients it contains, specifically scent or fragrance (*e.g.*, Flower or Fruit Waters).  "Any product that is scented can potentially damage the skin."[43]  "Fragrance is in the No. 1 cause of allergic contact dermatitis, … which is a condition in which the skin gets inflamed and becomes itchy, red, and rashy acter contact with an irritating substance."[44]  "And while not everyone may experience a reaction, or react immediately, experts said that certain health issues can emerge after prolonged use."[45]

42.    Here, Defendant adds scent to the Products through a variety of "Fruit and Flower Waters" in its Normal Wash, Sensitive Wash, and Cucumber Aloe Wash, and even adds ambiguous "Fragrance" to the Bergamot Rose Wash.  Accordingly, the Products are not suitable for vulvar use.

| Product | Ingredient |
|---|---|
| Normal Foaming Wash | Lavandula Angustifolia (Lavender) Flower Water |
| Sensitive Foaming Wash | Lavandula Angustifolia (Lavender) Flower Water |
| Cucumber Aloe Foaming Wash | Cucumis Sativus (Cucumber) Fruit Water |
| Bergamot Rose Foaming Wash | Fragrance |

---

[42] Mayo Clinic Staff, *You Don't Need Fancy Products For Good Feminine Hygiene*, MAYO CLINIC HEALTH SYSTEM (Nov. 2, 2016), https://www.mayoclinichealthsystem.org/hometown-health/speaking-of-health/you-dont-need-fancy-products-for-good-feminine-hygiene.

[43] Quoting Dr. Staci Tanouye.  Dani Blum, *When Vagisil Targeted Teens, the Backlash Was Swift*, THE NEW YORK TIMES (Feb. 18, 2021), https://www.nytimes.com/2021/02/18/well/vagisil-omv-teens.html.

[44] *Id.* (citation omitted).

[45] *Id.*

43.     Even if feminine care washes are fragrance free, gynecologists still caution women against using these feminine care washes on the vulva because, again, ***any form of soap*** can alter vaginal pH levels and make women more susceptible to infections and diseases, which makes the Products unsuitable for use on the vulva.[46]

44.     Despite Defendant's claim that the Products "support[] a balanced pH range," gynecologists urge women not to use any feminine care washes because they can "alter[] the normal eco-system [(i.e., pH balance)] and can allow growth of [bad] bacteria and yeast."[47]

45.     Healthy vaginal pH levels serve to protect a woman's sexual anatomy.  pH is a measurement of how acidic or basic a substance is.  pH is measured on a scale from 0 to 14—a pH less than 7 is acidic while a pH over 7 is basic.  Generally, a healthy vagina has a pH level between 3.8 and 4.5, meaning it is moderately acidic.  If the vaginal pH levels are thrown off, a woman becomes more susceptible to bacterial vaginosis, yeast infections, human papillomavirus, herpes simplex virus, HIV, and trichomoniasis.[48]

46.     Defendant touts its Products as "safe, high-quality formulas down to the last drop" for use on the vulva. [49]  However, contrary to Defendant's express representations, the

---

[46] Mayo Clinic Staff, *You Don't Need Fancy Products For Good Feminine Hygiene*, Mayo Clinic Health System (Nov. 2, 2016), https://www.mayoclinichealthsystem.org/hometown-health/speaking-of-health/you-dont-need-fancy-products-for-good-feminine-hygiene; *see also Vaginitis: Frequently Asked Questions*, The American College of Obstetricians and Gynecologists, https://www.acog.org/womens-health/faqs/vaginitis (Dec. 2021).

[47] *Id.*; *see also Vaginitis: Frequently Asked Questions*, The American College of Obstetricians and Gynecologists, https://www.acog.org/womens-health/faqs/vaginitis (Dec. 2021).

[48] Stephanie Watson, *Everything You Need to Know About Maintaining Your Vaginal pH Balance*, Healthline (July 11, 2019), https://www.healthline.com/health/womens-health/vaginal-ph-balance#normal-ph.

[49] *Normal Wash*, The Honey Pot Co., https://thehoneypot.co/products/normal-wash (last visited Jan. 4, 2023); *Sensitive Wash*, The Honey Pot Co., https://thehoneypot.co/products/normal-wash (last visited Jan. 4, 2023); *Bergamot Wash*, The Honey Pot Co., https://thehoneypot.co/products/normal-wash (last visited Jan. 4, 2023); *Cucumber Aloe Wash*, The Honey Pot Co., https://thehoneypot.co/products/normal-wash (last visited Jan. 4, 2023).

Products are not safe for vulvar use and are therefore unsuitable as feminine care foaming washes.  At a minimum, the medical community advises not using anything other than water on vulvas because women's sexual anatomy is self-cleaning.  More troubling, though, is the fact that the Products are known to cause vulvar skin irritations or an imbalanced pH, which in turn causes bacterial vaginosis, yeast infections, human papillomavirus, herpes simplex virus, HIV, and trichomoniasis.

47.    To summarize, Defendant markets its Products as a "feminine care … foaming wash" with a "safe and effective cleansing formula" suitable for "[a woman's] most delicate parts."[50]  These representations are false and misleading.  Gynecologists have stated that feminine hygiene products like Defendant's are not only unsafe for vulvar use because the ingredients in the Products can cause infections and make women more susceptible to disease, the Products are unnecessary because the vagina and vulva are self-cleaning and only plain warm water is needed to assist that process.

48.    At best, therefore, Plaintiffs and other Class Members would not have paid as much for the Products but for Defendant's misrepresentations regarding the Products' suitability as feminine care foaming washes for vulvar use, and but for Defendant's omissions that the Products are not suitable as feminine care washes for vulvar use.  At worst, Plaintiffs and other Class Members would not have purchased the Products at all but for Defendant's misrepresentations and omissions because the Products are not only dangerous, they are unnecessary and therefore worthless.  In either case, Plaintiffs and other Class Members did not receive the benefit of their bargain with Defendant.

---

[50] *Id.*

## CLASS ALLEGATIONS

49.    Plaintiffs seek to represent a class defined as all persons in the United States who purchased the Products during the applicable statute of limitations period (the "Class"). Excluded from the Class are governmental entities, Defendant, Defendant's affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators, and anyone who purchased the Products for resale.  Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

50.    Plaintiffs McAuley and Wright also seek to represent a subclass consisting of Class members who purchased the Products in New York during the applicable statute of limitations period (the "New York Subclass").

51.    Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class and Subclass may be expanded or narrowed by amendment or amended complaint.

52.    **Numerosity.**  The members of the Class and Subclass are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiffs reasonably estimate that there are thousands of members in the Class and Subclass.  Although the precise number of members in the Class and Subclass is unknown to Plaintiffs, the true number of members of the Class and Subclass is known by Defendant and may be determined through discovery.  Members of the Class and Subclass may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

53.    **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all members of the Class and Subclass and predominate over

any questions affecting only individual Class members.  These common legal and factual

questions include, but are not limited to:

(a) whether Defendant's labeling, marketing, and promotion of the Products was

false and misleading;

(b) whether Defendant's conduct was unfair and/or deceptive; and

(c) whether Plaintiffs and the Class and Subclass have sustained damages with

respect to the common-law claims asserted, and if so, the proper measure of

their damages.

54. With respect to the Subclass, additional questions of law and fact common to the

members that predominate over questions that may affect individual members include whether

Defendant violated Defendant violated GBL §§ 349 and 350.

55. **Typicality.**  The claims of the named Plaintiffs are typical of the claims of other

members of the Class and Subclass in that the named Plaintiffs were exposed to Defendant's

false and misleading marketing, purchased the Product, and suffered a loss as a result of that

purchase.

56. **Adequacy of Representation.**  Plaintiffs are adequate representatives of the

Class and Subclass because their interests do not conflict with the interests of the members of the

Class and Subclass she seeks to represent, they have retained competent counsel that is highly

experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously

prosecute this action on behalf of the Class and Subclass.  Furthermore, Plaintiffs have no

interests that are antagonistic to those of the Class or Subclass.

57. **Superiority.**  A class action is superior to all other available means for the fair

and efficient adjudication of this controversy.  The damages or other financial detriment suffered

by individual members of the Class and Subclass are relatively small compared to the burden and

expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for the Class or Subclass on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if members of the Class and Subclass could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

## CAUSES OF ACTION

### COUNT I
### Violation Of New York GBL § 349
### (On Behalf Of The New York Subclass)

58.     Plaintiffs McAuley and Wright hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

59.     Plaintiffs McAuley and Wright bring this claim individually and on behalf of the New York Subclass against Defendant.

60.     New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

61.     In its provision of services throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of New York's General Business Law § 349.

62.     By the acts and conduct alleged herein, Defendant has engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, (i) misrepresenting

that the Products as a "feminine care … foaming wash" that is suitable for vulvar use, and
(ii) failing to disclose that the Products are not in fact safe or suitable for vulvar use.

63. The foregoing deceptive acts and practices were directed at consumers.

64. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the suitability of the Products for vulvar use, as well as the fact that Products bestow no benefit at all, in order to induce consumers to purchase the Products.

65. Plaintiffs McAuley and Wright and members of the Subclass were injured as a result of Defendant's deceptive acts and practices because they would not have purchased the Products, or would have paid substantially less for them, had Defendant not misrepresented the Products were suitable for vulvar use, and had Defendant not failed to disclose that the Products were not suitable for vulvar use.

66. By reason of this conduct, Defendant engaged in deceptive conduct in violation of GBL § 349.

67. On behalf of themselves and other members of the Subclass, Plaintiffs McAuley and Wright seek to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT II
### Violation Of New York GBL § 350
### (On Behalf Of The New York Subclass)

68. Plaintiffs McAuley and Wright hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

69. Plaintiffs McAuley and Wright bring this claim individually and on behalf of the New York Subclass against Defendant.

70.     New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

71.     Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

72.     Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of GBL § 350.

73.     Defendant's false, misleading, and deceptive statements, representations of fact, and omissions were and are directed to consumers.

74.     Defendant's false, misleading, and deceptive statements, representations of fact, and omissions were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

75.     Defendant's false, misleading, and deceptive statements representations of fact, and omissions have resulted in consumer injury or harm to the public interest.

76.     Defendant possessed superior knowledge that the Products were not suitable for vulvar use.  As a sophisticated consumer products company ostensibly specializing in female hygiene, Defendant was or should have been aware that gynecologists did not recommend the use of its Products, and had in fact advised that Defendant's Products were unsafe.

77.     As a result of Defendant's misrepresentations and omissions, Plaintiffs and members of the Subclass have suffered economic injury because they would not have purchased the Products, or would have paid substantially less for it, had Defendant not misrepresented the Products were suitable for vulvar use, and had Defendant not failed to disclose that the Products were not suitable for vulvar use.

78.     On behalf of themselves and other members of the New York Subclass, Plaintiffs McAuley and Wright seek to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT III**
**Breach of Express Warranty**
**(On Behalf Of The Class And The Subclass)**

79.     Plaintiffs McAuley and Wright hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

80.     Plaintiffs McAuley and Wright bring this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

81.     This claim is brought under the laws of New York.

82.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Products were suitable for vulvar use.

83.     In fact, the Products are not suitable for vulvar use.  Doctors advise women to only use water to clean the vulva because all forms of soap can cause irritation to the sensitive vulvar skin and all forms of soap can alter the natural pH levels of the vagina.  Moreover, any soaps that contain fragrance, such as the Products at issue, are even more likely to irritate the vulva.

84.     As a direct and proximate cause of Defendant's breach of express warranty, Plaintiffs and Class and Subclass members have been injured and harmed because they would not have purchased the Products, or would have paid substantially less for them, if they had known that the Products were unsuitable for vulvar use.

85.     On November 15, 2022, prior to filing this action, Defendant was served via certified mail with a pre-suit notice letter on behalf of Plaintiff McAuley that complied in all respects with U.C.C. §§ 2-313, 2-314, and 2-607.  Plaintiffs' counsel sent Defendant a letter

advising that Defendant breached an express warranty and demanded that Defendant cease and desist from such breaches and make full restitution by refunding the monies received therefrom. A true and correct copy of Plaintiffs' counsel's letter is attached hereto as **Exhibit 1**.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf Of The Class And The Subclass)**

86. Plaintiffs McAuley and Wright incorporate by reference the allegations contained in all proceeding paragraphs of this complaint.

87. Plaintiffs McAuley and Wright bring this claim individually and on behalf of members of the Class and Subclass against Defendant.

88. This claim is brought under the laws of the State of New York.

89. Plaintiffs and Class and Subclass members conferred benefits on Defendant by purchasing the Products.

90. Defendant has knowledge of such benefits.

91. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class and Subclass members' purchases of the Products. Retention of monies under these circumstances is unjust and inequitable because Defendant misrepresented that the Products were suitable for vulvar use and failed to disclose the Products were not suitable for vulvar use, and charged a price premium based on those representations and omissions.

92. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and Class and Subclass members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the Class and Subclass members for their unjust enrichment, as ordered by the Court.

## COUNT V
### Fraud
### (On Behalf Of The Class And The Subclass)

93.     Plaintiffs McAuley and Wright incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

94.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

95.     This claim is brought under the laws of the State of New York.

96.     As discussed above, Defendant provided Plaintiffs and Class and Subclass members with false or misleading material information about the Products, including but not limited to the fact that the Products were suitable for vulvar use, and failing to disclose the Products were not suitable for vulvar use.

97.     These misrepresentations and omissions were made with knowledge of their falsehood.  As a sophisticated consumer products company ostensibly specializing in female hygiene, Defendant was or should have been aware that gynecologists did not recommend the use of its Products, and had in fact advised that Defendant's Products were unsafe.

98.     The misrepresentations and omissions made by Defendant, upon which Plaintiffs and members of the Class and Subclass reasonably and justifiably relied, were intended to induce, and actually induced Plaintiffs and members of the Class and Subclass to purchase the Products.

99.     The fraudulent actions of Defendant caused damage to Plaintiffs and members of the Class and Subclass, who are entitled to damages and other legal and equitable relief as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated,

seeks judgment against Defendant, as follows:

(a)     For an order certifying the Class and the Subclass under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs as the representatives of the Class and Subclass, and naming Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass members;

(b)     For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c)     For an order finding in favor of Plaintiffs, the Class, and the Subclass on all counts asserted herein;

(d)     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)     For prejudgment interest in all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief;

(g)     For an order awarding Plaintiffs and the Class and Subclass their reasonable attorney's fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any

and all issues in this action so triable of right.

Dated: June 29, 2023                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:___*/s/ Philip L. Fraietta*___
        Philip L. Fraietta

Philip L. Fraietta
Max S. Roberts
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: phfraietta@bursor.com
        mrobert@bursor.com

**BURSOR & FISHER, P.A.**
Brittany S. Scott (*Pro Hac Vice Forthcoming*)
Emily A. Horne (*Pro Hac Vice Forthcoming*)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
Email:  bscott@bursor.com
        ehorne@bursor.com

*Attorneys for Plaintiffs*